1    B. ANDREW BEDNARK (admitted *pro hac vice*)
     abednark@omm.com
2    MARK E. BERGHAUSEN (S.B. #278968)
     mberghausen@omm.com
3    O'MELVENY & MYERS LLP
     Times Square Tower
4    7 Times Square
     New York, New York  10036-6524
5    Telephone:     (212) 326-2000
     Facsimile:     (212) 326-2061
6
     Attorneys for Plaintiff
7    LocusPoint Networks, LLC

8
     Law Office of Charles A. Tweedy
9    Charles A. Tweedy, Bar No. 096234
     11341 Gold Express Drive, Suite 110
10   Gold River, California 95670
     Telephone:     (916) 631-8388
11   Facsimile:     (916) 631-8188

12   Attorneys for Defendant
     D.T.V. LLC
13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO

17

18   LocusPoint Networks, LLC,              Case No. 3:14-cv-01278-JSC
     a Delaware Limited Liability Company,
19                                          **JOINT CASE MANAGEMENT
                      Plaintiff,            STATEMENT**
20
           v.                               Hearing Date: August 7, 2014
21                                          Time: 1:30 PM
     D.T.V. LLC,                            Place: Courtroom F, 15th Floor
22   a Wyoming Limited Liability Company,   Judge: Hon. Jacqueline Scott Corley

23                    Defendant.

24

25        LocusPoint Networks, LLC ("LPN") and D.T.V. LLC ("DTV") submit this Joint Case

26   Management Statement in compliance with the Court's orders of March 20 and July 25, 2014,

27   D.E. #5, #33, the Standing Order for All Judges of the Northern District of California regarding

28   case management statements, and Civil Local Rule 16-9.

                                                      JOINT CASE MANAGEMENT
                                                                  STATEMENT
                                                       NO. 3:14-CV-01278-JSC

1  **I.    JURISDICTION AND SERVICE**

2      This court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3) because DTV is a

3  citizen of Florida, LPN is a citizen of foreign countries and of states other than Florida, and the

4  amount in controversy exceeds $75,000.  All parties to this action have been served.  D.E. #9.

5  **II.    FACTS**

6      Relevant allegations from the Complaint are as follows:

7      DTV, a Wyoming LLC, owns and operates WPHA-CD ("WPHA"), a television station in

8  Philadelphia, Pennsylvania, that holds a Class A license from the Federal Communications

9  Commission ("FCC").

10      In December 2006, DTV did not allow an FCC agent access to inspect the main studio of

11  WPHA, as FCC rules require.  DTV did not respond to subsequent communications from the

12  FCC regarding WPHA.  On June 15, 2007, the FCC issued a letter of inquiry to DTV.  In August

13  and September 2011, FCC agents were again denied access to inspect WPHA's main studio.

14      On October 26, 2012, DTV and LPN executed an Asset Purchase Agreement ("APA")

15  under which LPN agreed to purchase WPHA's assets, including its Class A license.  Assigning a

16  Class A license requires FCC consent.  Thus, DTV represented in the APA, among other things,

17  that WPHA was not the subject of any FCC complaints or investigations and that WPHA had

18  fully complied with all FCC rules.  DTV did not inform LPN that it had denied FCC agents

19  access to inspect WPHA's studio, or that those denials were the subject of an FCC inquiry.

20      LPN first learned of these matters at an FCC meeting on February 7, 2013.  At that

21  meeting, the FCC invited DTV to submit information to address its concerns.  LPN encouraged

22  DTV to do so because the APA obligated DTV to, among other things, "promptly provide all

23  information and documents requested by the FCC."

24      DTV did not submit a memorandum to the FCC until May 23, 2013.  It contained two

25  sentences about WPHA's failures to permit inspection.  Meanwhile, on June 11, 2013, DTV's

26  sole member told LPN that he wanted to "explore other options" unless the APA closed by

27  September 1, 2013, when DTV could exercise a termination right under the APA.

28      On July 26, 2013, the FCC Enforcement Bureau offered DTV another chance to present

JOINT CASE MANAGEMENT
STATEMENT
NO. 3:14-CV-01278-JSC

1    facts about WPHA's August and September 2011 denials of access to FCC field agents.  LPN

2    asked DTV to submit the additional facts that the FCC requested.  DTV declined.  Instead, DTV

3    stated that it intended to argue that the FCC had previously tolerated failures to permit inspection.

4    On August 5, 2013, DTV refused LPN's request that the parties extend the APA's September 1,

5    2013 termination-option date to allow the FCC time to resolve its inquiry and renew and consent

6    to the assignment of WPHA's Class A license.  On August 15, 2013, DTV submitted its

7    memorandum to the FCC regarding a proposed remedy for WPHA's August and September 2011

8    denials of access to FCC field agents.  On August 24, 2013, LPN again requested that the parties

9    extend the September 1, 2013 termination-option date.  DTV again declined.

10           DTV disputes the allegations of the Plaintiff's Complaint.  DTV sent LTV a notice of

11   termination of the APA on March 11, 2014.

12   **III.    LEGAL ISSUES**

13           The parties disagree whether DTV breached the APA.  *See Greenstar, LLC v. Heller*,

14   934 F. Supp. 2d. 672, 686 (D. Del. 2013).  The legal issues center on whether DTV breached its

15   obligations under the APA:

16           • to "diligently prosecute the FCC Application and otherwise use their best efforts to

17             obtain the FCC Consent as soon as practicable," APA § 5.1;

18           • to "cooperate with the FCC in connection with obtaining the FCC Consent," APA

19             § 5.2;

20           • to "promptly provide all information and documents requested by the FCC in

21             connection therewith," APA § 5.2; and

22           • to "cooperate fully with the other in taking any commercially reasonable actions

23             (including to obtain the required consent of any governmental instrumentality or

24             any third party) necessary to accomplish the transactions contemplated by this

25             Agreement," APA § 9.1.

26           LPN also contends that DTV breached its representations under the APA that:

27           • "there are no complaints or proceedings pending or threatened before the FCC

28             relating to the operation of [WPHA]," APA § 7.4(b);

JOINT CASE MANAGEMENT
STATEMENT
NO. 3:14-CV-01278-JSC

1

2

3

4

5

6

7

8

9

10

11

12

- WPHA was "operating in compliance with the terms and conditions of the FCC Licenses, the Communications Act and the current rules, regulations and policies of the FCC applicable to [WPHA] in all material respects," APA § 7.4(c);

- DTV "has not received any notice asserting any noncompliance with any applicable statute, rule or regulation, in connection with the operation of [WPHA], and, to [DTV's] knowledge, no investigation is pending or threatened regarding any such matter," APA § 7.8; and

- "there are no . . . legal proceedings, claims or governmental investigations pending against, or, to [DTV's] knowledge, threatened against[] [DTV] relating to or affecting [the APA] or the transactions contemplated hereby or [WPHA] Assets, nor, to [DTV's] knowledge, is there any basis for any such . . . legal proceeding, claim or government investigation," APA § 7.10.

13   The parties also disagree whether DTV's termination under section 15.1(e) of the APA is

14   valid because it was the product of DTV's breaches. *See W & G Seaford Assocs., L.P. v. E. Shore*

15   *Markets, Inc.*, 714 F. Supp. 1336, 1341 (D. Del. 1989) ("Delaware courts follow the principle that

16   a party who wrongfully prevents a thing from being done cannot avail itself of the

17   nonperformance it has occasioned."); *accord Wavedevision Holdings, LLC v. Millennium Digital*

18   *Media Sys., LLC*, C.A. No. 2993-VCS, 2010 WL 3706624 (Del. Ch. Sept. 17, 2010).

19   This case also presents the issue whether specific performance should be ordered as the

20   parties agreed in Article 15.2(b) of the APA. *See Gildor v. Optical Solutions, Inc.*, 2006 Del. Ch.

21   LEXIS 110, at *37 (Del. Ch. June 5, 2006).

22   **IV.   MOTIONS**

23   DTV's Motion to Dismiss, filed April 29, 2014, is the only pending motion. No

24   additional non-dispositive motions are currently anticipated.

25   **V.   AMENDMENT OF THE PLEADINGS**

26   LPN does not expect to amend its pleadings to add parties or claims, and DTV has not

27   filed any pleadings. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), DTV will

28   file any answer within 14 days of when the Court decides its Motion to Dismiss.

- 4 -

1 **VI.   EVIDENCE PRESERVATION**

2 The parties have taken reasonable steps to preserve potentially relevant communications

3 and documents and agree that, should any issues arise regarding a party's evidence preservation,

4 the parties will meet and confer in good faith to resolve them.

5 **VII.   DISCLOSURES**

6 The parties have not yet exchanged Rule 26(a) disclosures.  The parties have proposed an

7 August 14, 2014 deadline for the exchange of initial disclosures in Section XVII below.

8 **VIII.   DISCOVERY**

9 No discovery has been taken to date.  The parties do not anticipate the need to limit or

10 modify the discovery rules of the Federal Rules of Civil Procedure.

11 **XI.   RELIEF**

12 LPN seeks an order for specific performance of the APA.

13 **XII.   SETTLEMENT AND ADR**

14 The parties believe that settlement is possible.  The parties met for an ADR Phone

15 Conference on July 23, 2014, in accordance with the Order Setting Initial Case Management

16 Conference and ADR Deadlines, D.E. #5.  Both parties have complied with ADR Local Rule 3-5.

17 Key discovery and motions necessary to position the parties to negotiate a settlement

18 include DTV's motion to dismiss, the exchange of initial disclosures, and the production of

19 DTV's communications with the FCC and with WPHA regarding compliance with FCC

20 regulations.

21 **XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

22 Both parties consent to magistrate judge jurisdiction, including trial and entry of final

23 judgment.  D.E. #11, #17.

24 **XIV.   OTHER REFERENCES**

25 This case is not suitable for reference to binding arbitration, a special master, or the

26 Judicial Panel on Multidistrict Litigation.

27 **XV.   NARROWING OF ISSUES**

28 The parties anticipate being able to narrow issues by stipulation or motion, such as issues

- 5 -

JOINT CASE MANAGEMENT
STATEMENT
NO. 3:14-CV-01278-JSC

1  pertaining to the authenticity and admissibility of certain documents and exhibits.

2  **XVI.  EXPEDITED SCHEDULE**

3  The parties do not believe that this case can be handled on an expedited basis with

4  streamlined procedures.

5  **XVII.  SCHEDULING**

6  The parties jointly propose the following schedule for discovery, dispositive motions, and

7  trial.

| | |
|---|---|
| Exchange of Rule 26(a) Initial Disclosures | August 14, 2014 |
| Service of Initial Document Requests | August 28, 2014 |
| Completion of Document Production and Written Party Discovery | November 24, 2014 |
| Completion of Depositions | January 9, 2015 |
| Deadline for Dispositive Motions | February 13, 2015 |
| Deadline for Oppositions to Dispositive Motions | March 12, 2015 |
| Deadline for Replies to Dispositive Motions | April 10, 2015 |
| Hearing on Dispositive Motions | April 30, 2015 |
| Pretrial Conference | June 12, 2015 |
| Trial Start Date | June 22, 2015 |

**XVIII. TRIAL**

LPN has demanded a jury trial for all issues so triable. The parties estimate that the trial will take approximately 5 days.

**XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

LPN filed its Local Rule 3-15 disclosure on March 15, 2014. D.E. #4. Entities owning 10% or more of LPN include BTO LPN Holding LLC. Other individuals and entities with a financial interest in LPN include William deKay, Ravi Potharlanka, Kyle Detwiler, Wayne Berman, Edward Rimland, Jasvinder Khaira, David Blitzer, Thomas Scott, Keith Kaczmarek, Blair Levin, Richard Lynch, and Jack Plating.

JOINT CASE MANAGEMENT
STATEMENT
NO. 3:14-CV-01278-JSC

1    Individuals and entities holding an interest that could be substantially affected by the

2    outcome of the proceeding include Patrick Communications L.L.C.

3        DTV has not filed a Local Rule 3-15 disclosure, but DTV represents that the sole owner of

4    DTV is Randolph Weigner.

5        Dated:  July 3/ , 2014

6                                                B. ANDREW BEDNARK
                                                 MARK E. BERGHAUSEN
7                                                O'MELVENY & MYERS LLP

8

9                                                By:        /s/ B. Andrew Bednark
                                                              B. Andrew Bednark
10                                               Attorneys for Plaintiff
                                                 LocusPoint Networks, LLC
11

12       Dated:  July 3/ , 2014

13                                               CHARLES A. TWEEDY

14

15                                               By:
                                                              Charles A. Tweedy
16                                               Attorneys for Defendant
                                                 D.T.V. LLC

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT
STATEMENT
NO. 3:14-CV-01278-JSC